# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CAMERON MCCARY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 25-CV-0625 |
| | : | |
| JOSEPH TERRA, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

YOUNGE, J.                                                      APRIL 30, 2025

Plaintiff Cameron McCary, a convicted prisoner currently incarcerated at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, asserting violations of his rights arising from the conditions of his confinement. Currently before the Court are McCary's Complaint ("Compl." (ECF No. 2)), his Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1), and his Prisoner Trust Fund Account Statement.[1] (ECF No. 7.) McCary asserts claims against SCI Phoenix Superintendent Joseph Terra and Montgomery County. (Compl. at 3.) For the following reasons, the Court will grant McCary leave to proceed *in forma pauperis*, dismiss his claims against Montgomery County with prejudice and dismiss the remainder of his Complaint without prejudice for failure to state a claim.

---

[1] Also pending is McCary's Motion to Appoint Counsel. (ECF No. 3.) McCary's request for appointment of counsel is premature at this stage of the litigation in light of the Court's dismissal of his Complaint for failure to state a claim. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim"). The Court will therefore deny the Motion without prejudice to McCary's right to file a renewed motion for appointment of counsel in the future in accordance with the factors set forth by the United States Court of Appeals for the Third Circuit in *Tabron*.

# I.      FACTUAL ALLEGATIONS[2]

The gravamen of McCary's claim is that the air-conditioning at SCI Phoenix is frequently not working, and the extreme heat causes tempers to flare, resulting in physical discomfort and outbreaks of violence.  (*See* Compl.)  McCary alleges that he arrived at SCI Phoenix in May 2023 and from that time until the filing of his Complaint in February 2025, the air-conditioning frequently broke down.  (*Id*. at 4.)  He claims that "the prison" is aware of problems with the air-conditioning but does nothing about it.  (*Id*.)  He further claims that he "has reason to believe" that unidentified prison officials are deliberately turning off the air-conditioning as a means of punishment.  (*Id*.)  He bases this on the frequency with which the air-conditioning fails and what he sees as a temporal relationship between the times that disruptions in the prison occurred and times that the air-conditioning failed.  (*Id*. at 4-5.)  He claims that the denial of air-conditioning as punishment is an unwritten policy or practice at SCI Phoenix that constitutes cruel and unusual punishment.  (*Id*.)

McCary alleges that the lack of air-conditioning sometimes lasts as long as three to five days in succession, and that this may occur up to three times in a month.  (*Id*. at 7.)  He estimates that between his arrival at SCI Phoenix in May 2023 through the filing of his Complaint in February 2025, there was no air-conditioning on 50 to 80 days.  (*Id*.)  He notes, too, that SCI Phoenix does not have operable windows and air cannot circulate naturally.  (*Id*.)  He claims that, as a result of the lack of air-conditioning he has experienced dizziness, exhaustion,

---

[2] The factual allegations set forth in this Memorandum are taken from McCary's Complaint (ECF No. 2).  The Court adopts the pagination supplied by the CM/ECF docketing system. Where appropriate, grammar, spelling, and punctuation errors in McCary's pleading will be corrected for clarity.

sweating, breathlessness, dehydration, migraines, irritability, difficulty sleeping, confusion, and fatigue. (*Id*. at 7.)

McCary links the allegedly "excessive" degree of violence that occurs during the summer to the lack of air-conditioning, claiming that it creates a dangerous environment.[3] (*Id*. at 6.) He alleges that he and numerous other inmates have filed grievances with Defendant Terra complaining about the situation, but that he either denies the grievances or ignores them, choosing not to address the matter. (*Id*.) McCary also alleges that he has spoken to Defendant Terra on numerous occasions about the frequent unavailability of air-conditioning but that, despite his knowledge of and authority to address this problem, he has not done so. (*Id*. at 5-6.) He claims that this suggests that Terra has acquiesced in the misuse of air-conditioning at the prison and that his conduct amounts to deliberate indifference to his serious medical needs and safety. (*Id*. at 6-7.) McCary claims that Terra's conduct warrants imposition of punitive damages, because he knows of the problem and chooses not to address it, notwithstanding his knowledge of the increased risk of violence that accompanies the excessive heat. (*Id*. at 8.)

McCary also seeks to assert a claim against Montgomery County pursuant to *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). He alleges that the county has failed to intervene though it has been aware of the ingoing problem for years. (*Id*. at 8-9.) He claims that the county's consistent failure to act constitutes a policy, practice or custom that imposes cruel and unusual punishment upon inmates. (*Id*. at 9.)

---

[3] McCary does not describe any injuries he specifically endured that were attributable to the increase in violence that he alleges occurs when the air-conditioning is not functioning.

McCary seeks a preliminary injunction ordering the Department of Corrections to refrain from turning off the air-conditioning at SCI Phoenix.[4]  (*Id.* at 10.)  He also seeks money damages.  (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant McCary leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v.*

---

[4] Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions.  "The standards for a temporary restraining order are the same as those for a preliminary injunction." *Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994).  Preliminary injunctive relief "is not granted as a matter of right."  *Kershner v. Mazurkiewicz*, 670 F.2d 440, 443 (3d Cir. 1982).  Rather, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal quotations omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008); *Fulton v. City of Philadelphia*, 922 F.3d 140, 152 (3d Cir. 2019).  "The first two factors are prerequisites for a movant to prevail."  *Holland v. Rosen*, 895 F.3d 272, 286 (3d Cir. 2018).  "If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate."  *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).  In light of the Court's disposition of McCary's claims, he cannot establish that he is likely to succeed on the merits of this case, and his request for a preliminary injunction will be denied.

[5] Because McCary is a prisoner, the Prison Litigation Reform Act requires that he pay the full filing fee in installments regardless of the outcome of this case.

*Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At this early stage of the litigation, the Court will

accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the

plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts

sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021),

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir.

2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.  As McCary is proceeding

*pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir.

2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

McCary asserts claims based on alleged violations of his constitutional rights.  The

vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. §

1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs" to

be liable.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957

F.3d 366, 374 (3d Cir. 2020).

### A.    Claims Against Montgomery County

McCary purports to assert a *Monell* claim against Montgomery County based on its

alleged policy or practice of permitting the air-conditioning at SCI Phoenix to be turned off as a

means of punishing inmates, in violation of their Eighth Amendment rights.  (Compl. at 9-10.)

However, the conditions giving rise to McCary's claims occurred at SCI Phoenix, which,

although located in Montgomery County, is a state correctional institution and an agency of the

Commonwealth of Pennsylvania's Department of Corrections.  (*See*

https://www.pa.gov/agencies/cor/state-prisons/sci-phoenix.html, last accessed April 22, 2025.)

McCary does not allege that Defendant Terra acted pursuant to any policy or practice

implemented by Montgomery County.  Additionally, McCary does not allege how Montgomery

County is legally responsible for the actions of Defendant Terra, who as Superintendent of SCI

Phoenix is an employee of the Commonwealth.  In short, because McCary does not allege any

basis for liability against Montgomery County, his claims will be dismissed with prejudice.

### B.    Eighth Amendment Claims Against Terra

The Court understands McCary to be asserting Eighth Amendment claims against

Superintendent Terra based on his denial of or inaction in the face of grievances filed in response

to the intermittent lack of air-conditioning and on his failure or refusal to assure that the air-

conditioning ceased malfunctioning.  (*See* Compl.)  He also claims that McCary was deliberately

indifferent to his serious medical needs.  (*See id*.)  For the following reasons, these claims are not

plausible.

### 1.    Claims Based on Grievances

McCary alleges that he filed grievances related to the intermittent lack of air-conditioning

and Terra either denied the grievances or ignored them, and that he personally spoke to Terra,

who did not respond to his complaints about the uncomfortable conditions.  (Compl. at 6-7.)

Claims based on the handling of prison grievances fail because "prisoners do not have a

constitutional right to prison grievance procedures."  *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d

Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v.

Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)).  Thus, a prison official's participation in

the grievance process, failure to take action in response to a prisoner's letter about the conditions

in which he is confined, or failure to act after becoming aware of an employee's actions, is, without more, an insufficient basis upon which to base those officials' personal involvement in the underlying violations. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants [Superintendent] Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs); *Burk v. Crowe*, Civ. A. No. 19-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals"); *see also Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*) ("Contrary to Robinson's assertions, awareness of a grievance or complaint after the allegedly unconstitutional conduct has occurred, without more, is insufficient to establish personal involvement.").  Accordingly, to the extent McCary bases his claims against Terra on his alleged improper handling of or response to grievances, the claims not plausible.  *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not

confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

### 2. Claims Based on Supervisory Position

McCary does not allege that Terra himself controlled the air-conditioning at SCI Phoenix and does not identify any other individuals who may have had direct control over it.  Instead, McCary alleges that Terra had the authority to resolve the air-conditioning problem but chose not to, (Compl. at 6), suggesting that his claims against Terra are based on his supervisory role at SCI Phoenix.  Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).  Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability."  *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she participated

8

in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Chavarriaga v. New Jersey. Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). Additionally, a supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (*per curiam*) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).

McCary has not plausibly alleged that Terra, through his actions or inactions, violated his constitutional rights. He has not alleged that Terra engaged in personal conduct or directed others to engage in conduct to violate his rights, and his allegation that Terra he knew of but acquiesced in constitutional violations committed by others is wholly conclusory and therefore not plausible. *Iqbal*, 556 U.S. at 678. Because it may be possible for McCary to alleged additional facts to state a plausible claim against Terra, his claims will be dismissed without prejudice. He will be granted leave to amend this claim.

### 3.    Conditions of Confinement Claim

Even had McCary properly alleged Terra's personal involvement, his allegation that Terra was deliberately indifferent because he was intermittently housed in an un-air-conditioned cell does not state a plausible Eighth Amendment claim as pled. The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.

*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *cf. Edwards v. Northampton Cnty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (*per curiam*) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane conditions of confinement."). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "However, where conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,' they do not violate the Eighth Amendment but rather 'are part of the penalty that criminal

10

offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677

(3d Cir. 2017) (*per curiam*) (quoting *Rhodes*, 452 U.S. at 347.

A prisoner must also establish that the defendants acted with deliberate indifference.

*Farmer*, 511 U.S. at 835.  A claim based on mere negligence is insufficient to allege a plausible

Eighth Amendment violation.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy

and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited

by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with

establishing conditions of confinement, supplying medical needs, or restoring official control

over a tumultuous cellblock.").

In cases arising from inadequate cooling or ventilation, the Eighth Amendment is

concerned with both the "severity" and the "duration" of the prisoner's exposure to these

conditions.  *Rosa-Diaz v. Harry*, No. 16-2303, 2017 WL 1316946, at *9 (M.D. Pa. Feb. 2, 2017),

*report and recommendation adopted*, 2017 WL 1283771 (M.D. Pa. Apr. 6, 2017) (citing *Dixon*

*v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) ("[I]t is not just the severity of the cold, but the

duration of the condition, which determines whether the conditions of confinement are

unconstitutional.").  A prisoner's mere discomfort, without more, does not offend the Eighth

Amendment.  *Id.* at *9 (citing *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) ("While the

temperature in extended lockdown may be uncomfortable, that alone cannot support a finding

that the plaintiff was subjected to cruel and unusual punishment in violation of the Eighth

Amendment.")  *See also Erskine v. Mears*, No. 22-381, 2022 WL 16921844, at *4 (Nov. 14,

2022) (dismissing on statutory screening an Eighth Amendment claim that inmates were not

provided air-conditioning in summer when temperatures exceeded 90 degrees and did not allege

a risk of injury from the conditions).  Brief or intermittent prison ventilation problems that are

promptly addressed by correctional officials and that are not sufficiently severe, protracted, or harmful to the prisoner do not constitute cruel and unusual punishment that would rise to the level of a violation of the Eighth Amendment. *See Marinelli v. Sorber*, No. 22-CV-2401, 2022 WL 4280476, at *5 (E.D. Pa. Sept. 15, 2022) (citing cases).

Here, McCary alleges that the air-conditioning did not function intermittently, sometimes for three to five days in succession, that this may occur up to three times in a month, and that over a period of approximately 21 months, there was no air-conditioning on 50 to 80 days. (Compl. at 6-7.)  He notes, too, that SCI Phoenix does not have operable windows and air cannot circulate naturally, making the lack of air-conditioning more severe.  (*Id*. at 7.)  He also alleges that he believes that air-conditioning is deliberately turned off to punish inmates, but provides no facts to support this speculative assertion, other than his view of an alleged temporal relationship between violence in the prison after which the air-conditioning fails to work.[6]  McCary claims that, as a result of the lack of air-conditioning he has experienced dizziness, exhaustion, sweating, breathlessness, dehydration, migraines, irritability, difficulty sleeping, confusion, and fatigue.  (*Id*. at 7.)  Significantly, he does not allege that these symptoms were so severe that he requested or required medical attention, nor does he identify any underlying serious medical issue – discussed further below – to which prison officials were deliberately indifferent by failing to ensure the air-conditioning consistently functioned.  (*See* Compl.)  As noted, mere discomfort

---

[6] The Court notes that this claim is somewhat at odds with his claim that the lack of air-conditioning *causes* outbreaks of violence at times.

does not give rise to an Eighth Amendment claim. *See Rosa-Diaz*, 2017 WL 1316946, at \*9; *Erskine*, 2022 WL 16921844, at \*4.

The brief and intermittent air-conditioning problems described do not rise to the level of an Eighth Amendment violation. *See Marinelli*, 2022 WL 4280476, at \*5 (no Eighth Amendment violation where air-conditioning was shut down for sixteen days and inmate did not allege he suffered physical injury). Because he has not established a sufficiently serious deprivation to satisfy the objective element of the Eighth Amendment analysis, McCary has not alleged a plausible claim based on lack of air-conditioning. This claim will be dismissed. McCary will be granted leave to amend this claim, if he can assert additional facts to cure the deficiency noted by the Court.

### 4.    Deliberate Indifference Claim

McCary makes passing reference to Terra's "deliberate indifference" to an, as just noted, unidentified medical condition, and the Court liberally construes his Complaint to include a claim for deliberate indifference to his serious medical needs. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer*, 511 U.S. at 835. The standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." *Farmer*, 511 U.S. at 837. "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

McCary makes a single reference to Terra having shown deliberate indifference to his serious medical needs and safety, (Compl. at 6-7) but does not describe what that condition is, whether he is receiving care for the condition, or whether Terra was even aware of the condition. "If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff."). McCary does not describe whether or how the intermittent lack of air-conditioning exacerbates the condition. As such, he has not stated a plausible Eighth Amendment claim. This claim will be dismissed and McCary will be granted leave to amend.

**IV.    CONCLUSION**

For the foregoing reasons, the Court will grant McCary leave to proceed *in forma pauperis*, dismiss his claims against Montgomery County with prejudice, and dismiss the remainder of his Complaint without prejudice.  McCary will be granted leave to file an amended complaint.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002).

An appropriate Order follows.

BY THE COURT:

/s/ John Milton Younge
_____
JOHN M. YOUNGE, J.